IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JARED HENKEL, FR-1982,  )
    Petitioner, )
     )
    v. ) 2:15-CV-477
     )
ROBERT GILMORE, et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.

Jared Henkel, an inmate at the State Correctional Institution at Greene has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be GRANTED and the petitioner ordered discharged from custody unless the Commonwealth retries him within one hundred-twenty (120) days.

Henkel is presently serving a life and concurrent ten to twenty year sentenced imposed on January 22, 2004, following his conviction by a jury of second degree murder, criminal conspiracy, kidnapping, robbery, aggravated assault and simple assault at Nos. CP-02-CR-5481-2002, CP-02-CR-5955-2002 and CP-02-CR-5956-2002 in the Court of Common Pleas of Allegheny County Pennsylvania. This sentence was imposed on January 22, 2004.[1] An appeal to the Superior Court was pursued in which the issues presented were:

1. Whether the trial court erred in failing to grant Henkel's motions for judgment of acquittal where the evidence was insufficient to sustain a verdict of guilt on Second Degree Murder.

2. Whether the trial court erred in not permitting a psychiatric examination of Matthew Henkel.

3. Whether the trial court erred in imposing a life sentence which under the facts of the case constitutes cruel and unusual punishment.

4. Whether the trial court erred in failing to grant defendant's post sentence motions.[2]

---

[1] See: Exhibit 10 to the answer, App. 1423-1482.
[2] See: Exhibit 19 to the answer, App.1565.

1

On November 14, 2007 the judgment of sentence was affirmed and leave to appeal was denied by the Pennsylvania Supreme Court on August 25, 2008.[3]

On April 17, 2009, a post-conviction petition was filed. The latter was denied on February 17, 2012.[4] An appeal was taken to the Superior Court in which the issues presented were:

> I. Whether PCRA counsel was ineffective for either overlooking the claim, or adopting the co-defendant's brief and then not presenting evidence supporting the claim that trial counsel was constitutionally ineffective for entering into a joint defense agreement with co-defendant, Craig Elias, that backfired causing prejudice to Jared Henkel by leaving him unprepared to testify or present an alternative strategy at trial?
>
> II. Whether PCRA counsel was ineffective for failing to argue to the court that the jury should have been instructed that Mathew Henkel's alleged admission to his father, Bruce Henkel, could be used as substantive evidence under clearly established federal law?
>
> III. Whether PCRA counsel was ineffective for failing to argue that the admission of prior bad acts denied due process of law as the evidence did not fit into the chain of logical inferences no link of which may be the inference that the defendant has the propensity to commit the crime charged?
>
> IV. Whether trial counsel was ineffective for not seeking to obtain Matthew Henkel's medical records before trial?
>
> V. Whether trial counsel was ineffective for failing to confront and cross-examine Matthew Henkel regarding the penalties he faced if convicted of conspiracy to commit murder?
>
> VI. Whether trial counsel was ineffective for failing to object to the prosecutor's closing argument which used evidence of the defendant's prior bad acts that should not have been admitted in the first place to argue that the other crimes showed a propensity for violence?[5]

On April 11, 2014 the denial of post-conviction relief was affirmed.[6] Allowance of appeal was denied by the Supreme Court on October 21, 2014.[7]

---

[3] See: Exhibits 25 and 42 to the answer, App. 2439-2454, 2677.
[4] See: Exhibit 48 to the answer, App. 2856-2877.
[5] See: Exhibit 55 to the answer, App. 2930-2931.
[6] See: Exhibit 61 to the answer, App. 3074-3095.
[7] See: Exhibit 65 to the answer, App. 3161.

A second post-conviction petition was filed on May 7, 2014 and denied on June 4, 2014 as untimely.[8] On April 21, 2015, the dismissal was affirmed by the Superior Court which concluded that the post-conviction court lacked jurisdiction over the second post-conviction petition since the first post-conviction petition was still pending in the Pennsylvania appellate courts. (" at the time the PCRA court dismissed his second PCRA petition as untimely, Appellant's petition for allowance of appeal regarding his first PCRA petition was still pending with our Supreme Court. Accordingly, the second PCRA petition was premature under **Lark [**Commonwealth v. Lark, 746 A.2d 585, 588 (Pa.2000)("A subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought…)]. Therefore, the PCRA court correctly determined that it was prevented from addressing the merits of Appellant's second PCRA petition").[9] A petition for allowance of appeal remains pending at 190 WAL 2015 and the instant petition was filed on April 9, 2015.

The factual background to this prosecution is set forth in the April 11, 2014 Memorandum of the en banc Superior Court,

> Appellant [Jared Henkel] was found guilty following a joint trial with Craig Elias and Jared Lischner of second-degree murder, two counts of kidnapping, and one count each of criminal conspiracy, robbery, aggravated assault, and simple assault. The convictions arose from Appellant's participation in the abductions and beatings of Anthony Brownlee and Andrew Jones. During the criminal episode, Jones was strangled and killed by Elias.
>
> Elias, Appellant and the two victims were involved in a joint drug dealing enterprise. In 2002, Appellant rented 220 Sycamore Street in the Mount Washington area of Pittsburgh. Appellant stored drugs and money at the address in two safes. Appellant, Elias and Jones had keys to the house. On March 22, 2002, Appellant discovered that the safes had been taken from the stash house. He then called Jones, who was with Brownlee, and told both men to come to Sycamore Street. Meanwhile, Appellant and Elias met Matthew Henkel, Appellant's brother.
>
> Matthew Henkel brought duct tape, which he had been asked to obtain. Appellant, Elias, and Lischner took the tape and proceeded to Sycamore Street, where they met Brownlee and Jones. The five men discussed the missing safes and possible

---

[8] See: Exhibits 68 and 71 to the answer, App. 3186, 3194.
[9] See: Exhibit 78 to the answer, App. 3343-3345. We note that while the post-conviction court determined that the second petition was untimely, the Superior Court affirmed the dismissal on the basis that the court of Common Pleas lacked jurisdiction to entertain the petition during the pendency of an earlier appeal.

3

suspects. Elias asked Brownlee who had stolen the safes, and, when Brownlee responded that he did not know, Elias knocked him to the floor, began to beat him, and dragged him down the steps and into the kitchen. Jones was already in that room and was being held face down on the floor by Lischner.

Appellant and Lischner bound Jones' hands and feet with the duct tape while Elias did the same to Brownlee. The two victims were then taken upstairs and placed in different rooms, where they were questioned by all three defendants for several hours. Elias beat and threatened the two men and demanded that they disclose the location of the two safes. In addition, Elias choked Brownlee three times with a rope. Eventually, Brownlee was allowed to call a friend, who brought the three defendants $4,000 to secure Brownlee's and Jones' release. The friend left the money in the vehicle Jones and Brownlee had driven.

After receiving the cash, the three co-defendants still refused to let Brownlee and Jones leave. Appellant called his brother Matthew and asked him to borrow a pick-up truck and bring it, along with cement, to the Sycamore residence. Matthew obtained the truck but did not have money for the cement. He went to the Sycamore house with that vehicle and waited on the first floor with Appellant. While there, Matthew observed Elias and Lischner repeatedly traveling up and down the stairs. Appellant told Matthew that the three defendants believed that someone from inside the drug enterprise had stolen the safes. At one point, the three co-defendants conversed on the first floor. They all agreed that Jones was a dangerous person who would seek revenge for his torture if released but that Brownlee was not a threat to their safety. Appellant and Matthew then drove Brownlee to their residence in Mount Lebanon, Pennsylvania. Appellant did not return to the Sycamore residence.

Before Matthew left the Sycamore address with his brother and Brownlee, Elias told Matthew to obtain a fifty-pound weight from his father's house and return with it. Matthew complied. At Elias' command, Matthew went upstairs and helped Elias wrap Jones' body in garbage bags. Elias and Matthew loaded the body into the pick-up truck, and traveled to Steubenville, Ohio. On the way, the two men stopped at a home improvement store. Video surveillance showed that they separately purchased chains. During the drive to Ohio, Elias admitted to Matthew that he had killed Jones. Elias and Matthew disposed of Jones' body, which they weighed down with the chains and the weight, by throwing it over a bridge.

In exchange for immunity from prosecution, Matthew became a cooperating witness and showed police where he and Elias threw Jones' body from the bridge in Ohio. He testified at trial against Appellant, Elias, and Lischner. Counsel for the three co-defendants delved heavily into matters concerning Matthew's mental health and raised questions about his involvement in the kidnapping and murder, as well as his credibility. They also proffered that Matthew killed the victim because the victim had previously made fun of Matthew for being a homosexual.

At trial, Appellant underwent a thorough colloquy regarding his right to testify and indicated that it was his decision not to take the stand.[10]

In the instant petition, executed on April 6, 2015 and received in this Court on April 9, 2015 Henkel contends he is entitled to relief on the following grounds:

1. Trial counsel rendered constitutionally ineffective assistance in relying exclusively on pre-trial and trial statements from petitioner's co-defendant and his co-defendant's counsel, indicating that the co-defendant would testify at trial in support of the defense, and based entirely on those statements trial counsel made no pre-trial preparation for petitioner to testify at trial as an alternative in case his co-defendant changed his mind and chose not to testify.

2. Trial counsel rendered constitutionally ineffective assistance in failing to request the medical records of Commonwealth witness, Matthew Henkel, on the basis that the records contained exculpatory and impeachment evidence.

The Commonwealth concedes that the instant petition is timely.[11]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197

---

[10] See: Exhibit 61 to the answer, App. 3076-3077.

[11] Henkel's conviction became final on November 23, 2008 when the time in which to seek certiorari expired. He filed his first post-conviction petition on April 17, 2009 or about five months after his conviction became final. Post-conviction relief was ultimately denied on October 21, 2014 and the instant petition was filed on April 9, 2015 or after the expiration of about five and a half months. Thus, the one year period in which to seek federal review had not expired. For this determination we ignore the filing of the second post-conviction petition which was determined by the Superior Court to have been filed in a court without jurisdiction due to the pendency of the first post-conviction appeal.

(3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

In his brief, Henkel appears to be challenging the competence of post-conviction counsel in failing to introduce evidence at the post-conviction hearing concerning the ineffectiveness of trial counsel[12] When the same ineffectiveness claim was presented by his co-defendant he was granted a new trial. As the Commonwealth observed in its answer:

> Petitioner argues that he, like his codefendant, Jared Lischner, who successfully raised this claim at the PCRA hearing and was granted relief on this issue, was unprepared to testify because of his attorney's failure to prepare him and instead of putting him on the stand, instructed him to waive his right to testify, which each did after a colloquy. Notably, Mr. Lischner and his trial counsel, Patrick Thomassey, both testified at the PCRA hearing as to being unprepared when the joint defense plan backfired, that Mr. Lischner had wanted to testify, but Attorney Thomassey advised him that he could not due to the lack of preparation. (PCRA 50-56, 95-102). The PCRA court credited this testimony and granted [ ] a new trial based upon [ ] Attorney Thomassey's ineffective representation. Notably, petitioner failed to offer any evidence in support of such a claim. Petitioner's trial counsel, Attorney Cerasso, had passed away prior to the PCRA hearing. (PCRA 23). Petitioner did not testify [at either the trial or post-conviction proceedings] and, in fact, presented no evidence at all.[13]

Pennsylvania requires that claims of ineffective assistance of trial counsel be raised in post-conviction proceedings. Com v. Bosic, 997 A. 2d 1211 (Pa.Super.), leave to appeal denied 608 Pa. 659 (2010), cert. denied 131 S.Ct. 2939 (2011).

Of the two issues which the pro se petitioner seeks to raise here as developed in his brief, the first one alleges ineffective assistance of post-conviction counsel who failed to challenge trial counsel's alleged ineffectiveness in relying on the joint defense agreement that codefendant Elias would testify at trial and for this reason did not prepare Henkel to testify. When at trial Elias unexpectedly elected not to testify defense counsel was unprepared to have the petitioner testify in his own behalf. This issue was raised for the first time in the Superior Court as ineffective assistance of post-conviction counsel but the court declined to address it since it was not raised in the original post-conviction petition.[14] In Martinez v. Ryan, 132 S.Ct. 1309, 1315 (2012) the Court held that "inadequate assistance of counsel at *initial-review collateral proceedings* may

---
[12] In fact, post-conviction counsel did not introduce any evidence at the post-conviction hearing. See: Exhibit 47 to the answer, App. 2746-2854.
[13] See: Answer of the Commonwealth at p.35.
[14] See: Exhibit 61 to the answer, App. 3077 (the Superior Court wrote that the post-conviction appeal petition did not "claim that trial counsel was ineffective in neglecting to adequately prepare him to testify").

6

establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added). [15] See also: Norris v. Brooks, 2015 WL 4509368 (3d Cir.2015).

In reviewing Henkel's appeal from the denial of post-conviction relief, the Superior Court appeared to be struggling with the Pennsylvania Supreme Court's holding in Commonwealth v. Pitts, 603 Pa. 1 (2009). Specifically, the Court wrote:

> The Court in [Com. v. Holmes, 621 Pa. 595 (2013)] pointed out that *Martinez* … might offer a solution at the federal *habeas* level, but that the *Holmes* matter was not the proper vehicle to take action. Instead it opined, "It should await either the action of the General Assembly – in response to *Martinez* and cases such as [Com. v. Ligons, 601 Pa. 103 (2009)] and *Pitts* – or a case where the issue is properly joined." *Id.* There would be no need for the high Court to revisit its prior decisions, fashion a new remedy, or for there to be legislative action if defendants could presently raise for the first time on appeal claims regarding the effectiveness of initial PCRA counsel.
>
> We are cognizant that failing to address PCRA counsel ineffectiveness claims raised for the first time on appeal renders any effective enforcement of the rule-based right to effective PCRA counsel difficult at the state level…[16]

More telling is the dissent of Judge Bender wherein he wrote "I emphasize that in this case, failing to address Appellant's ineffectiveness claims does not merely make it *difficult* for him to raise them at the state levels it makes it *impossible*. (emphasis in original).[17] Thus, it would appear that the Superior Court recognizing the failing of state law as determined by the Pennsylvania Supreme Court in light of Martinez, nevertheless was compelled to follow that law.

We on the other hand are not bound by the decisions of the Pennsylvania Supreme Court but rather are bound by the determination of Martinez. The latter case clearly recognized that in some limited instances, a petitioner may not be able to raise the issue of ineffective assistance of post-conviction counsel at the initial stage of the proceedings. 132 S.Ct. at 1315. In Norris, 794 F.3d at 404 the Court wrote:

> "The *Martinez* Court … stated that the exception [to procedural default] applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings…
> [T]he Court was concerned only about cases in which the error of a prisoner's collateral review attorney results in "no state court at any level" hearing the

---

[15] We again note that during that same post-conviction process, Henkel's codefendant, Lischner raised this issue in his original post-conviction petition and after he and his trial attorney testified that they were unprepared to proceed when Elias opted not to testify at trial, a new trial was granted. See, Exhibit 61 to the answer, App. 3077.
[16] See: Exhibit 61 to the answer, App. 3087.
[17] Id. at p. 3094.

7

prisoner's claim and the claim being defaulted for purposed of habeas review in federal court.

In the present case the allegation is that post-conviction counsel was ineffective in that he failed to raise the ineffectiveness of trial counsel in the initial post-conviction proceedings. As a consequence, petitioner could not raise the issue prior to appealing, and was not raising an issue on appeal which could have been raised in the original post-conviction petition. That is, his first opportunity to raise the issue was in the Superior Court which as a result of Pennsylvania law could not address the issue.

As previously observed, petitioner's codefendant Lischner and his trial attorney testified that they were unprepared to have him testify at trial after codefendant Elias opted not to testify and as a result was granted relief by the post-conviction court. However, Henkel's post-conviction counsel did not have him testify at the post-conviction hearing and his trial counsel was deceased at the time of the post-conviction proceedings. While the two codefendants encountered the same obstacle at trial, their ultimate post-conviction relief differed due to the differences in their post-conviction counsel. Since the holding of both <u>Martinez</u> and <u>Norris</u> are to assure that a prisoner has at least one opportunity to raise a critical issue, the conclusion is inescapable that Henkel was denied the effective assistance of trial and post-conviction counsel and that he raised this issue at the first opportunity available to him. Accordingly, he is entitled to relief here.

The second issue which Henkel raises is the ineffectiveness of counsel for failing to secure the medical records of Commonwealth witness, Matthew Henkel. This issue was raised in the original post-conviction petition and for this reason is procedurally exhausted.

Under Pennsylvania law, communications between a patient and a mental health provider are confidential and can only be waived by the patient. 42 Pa.C.S.A. § 5944. Despite petitioner's request for mental health records of Commonwealth witness Matthew Henkel for impeachment purposes, counsel for Matthew Henkel refused to permit him to waive the privilege[18] although at trial Matthew Henkel did testify that he was taking Zoloft and Zyprexa.[19] Under Pennsylvania law "the statutory privilege pursuant to

---

[18] See: Exhibit 8 to the answer, App. 963-968.
[19] Id at p. 650.

Section 5944 is not outweighed by a defendant's right to cross-examine witnesses or his due process rights." Commonwealth v. Dowling, 584 Pa. 396, 404-405 (2005).

In the appeal from the denial of post-conviction relief, the Superior Court panel wrote on November 14, 2007:

> The trial court, after observing Matthew for a lengthy period of time, had no doubt as to his competency…
>
> In denying the psychiatric examination and the records request, the trial court concluded appellants' complaints spoke of Matthew's credibility and not his competency…[20]

As a matter of Pennsylvania law this privilege is not subject to review here. Swarthouse v. Cooke, 131 S.Ct. 859 (2011). However, even if this were not the case, the law of Pennsylvania was clear and counsel cannot be deemed to have been ineffective for failing to raise what would be deemed a meritless issue. Real v. Shannon, 600 F.3d 302 (3d Cir.2010).

Because petitioner's first claim of ineffective assistance of post-conviction counsel is supported by the record, he is entitled to relief here.

An appropriate Order will be entered.

---

[20] See: Exhibit 35 to the answer, App. 2448-2449. The en banc Superior Court summarily concluded that the records were privileged, Exhibit 61, App. 3089.

ORDER

AND NOW, this 17th day of September 2015, for the reasons set forth in the foregoing Memorandum, the petition of Jared Henkel for a writ of habeas corpus is GRANTED and he is ordered discharged from custody unless he is retried within one hundred-twenty (120) days.

The parties are advised that pursuant to Rule 4(a) F.R.App.P any party desiring to file an appeal must do so within thirty (30) days of this date by mailing a notice of appeal to the Clerk, United States District Court, 700 Grant Street, Pittsburgh, PA 15219-1957.

s/ Robert C. Mitchell
United States Magistrate Judge